SEYFARTH SHAW LLP
Myra B. Villamor (SBN 232912)
mvillamor@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone: (310) 277-7200
Facsimile: (310) 201-5219

Attorneys for Defendant
STARBUCKS CORPORATION

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

PETER STROJNIK, an individual,

Plaintiff,

v.

STARBUCKS CORPORATION,

Defendant.

Case No. 3:22-cv-7094

(Santa Clara County Superior Court, Case No. 22CV402294)

**DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT PURSUANT TO DIVERSITY OF CITIZENSHIP JURISDICTION [28 U.S.C. §§ 1332 AND 1441]**

Complaint Filed: July 21, 2022
Trial Date:        None Set

88285164v.3

To the United States District Court for the Northern District of California and to Plaintiff:

Please take notice that Defendant Starbucks Corporation ("Defendant") hereby files this Notice of Removal pursuant to 28 U.S.C. §§ 1332 and 1441(a) and (b), based on diversity of citizenship jurisdiction, in order to effectuate the removal of the above-captioned action from the Superior Court of the State of California, County of Santa Clara, to the United States District Court for the Northern District of California, and states that removal is proper for the following reasons:

## I.    BACKGROUND

1.     On July 21, 2022, Plaintiff Peter Strojnik ("Plaintiff") filed a Complaint in the Superior Court of the State of California, County of Santa Clara, entitled *Peter Strojnik v. Starbucks Corporation*, designated as Case No. 22CV402294.  In the Complaint, Plaintiff alleges three causes of action against Defendant: (1) injunctive relief pursuant the California Code of Civil Procedure § 526(a)(1) based on Defendant's alleged violation of Title III of the Americans with Disabilities Act ("ADA") and California Unruh Civil Rights Act ("UCRA"); (2) violation of the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200-17209, based on Defendant's alleged "dissemination of false and superficial loyalty to non-discrimination, inclusion and accessibility"; and (3) the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750-1784, based on Defendant's alleged "unfair and deceptive acts or practices by falsely representing itself as an inclusive, non-discriminatory corporate giant with accessible stores."

2.     On October 12, 2022, Plaintiff served Defendant with the Complaint.  A true and correct copy of the Complaint served on Defendant is attached as **Exhibit 1** (hereinafter "Complaint").

3.     On October 21, 2022, Defendant filed a Notice of Mistaken Filing of Vexatious Litigation on the grounds that Plaintiff is a vexatious litigant who had not complied with a Prefiling Order that required Plaintiff to obtain leave from the presiding

justice or presiding judge of the Santa Clara Superior Court prior to filing the Complaint. A true and correct copy of the Notice of Mistaken Filing, including a copy of the Prefiling Order issued against Plaintiff in the Superior Court of California for the County of San Luis Obispo, filed by Defendant is attached as **Exhibit 2.**

4.      On October 24, 2022, Plaintiff emailed counsel for Defendant a copy of a Request to Refer to the Presiding Judge the Honorable Theodore C. Zayner for Approval. A true and correct copy of the Request to Refer to the Presiding Judge the Honorable Theodore C. Zayner for Approval emailed to counsel for Defendant is attached as **Exhibit 3.**

5.      Exhibits 1 and 2 constitute all of the pleadings served on Defendant and/or filed by Defendant in the state court action prior to filing this Notice of Removal. (Declaration of Myra B. Villamor ("Villamor Decl.") ¶¶ 3-7.)  There are no pending hearings currently scheduled in the Santa Clara County Superior Court action. (Villamor Decl. ¶ 7.)

## II.      TIMELINESS OF REMOVAL

6.      This notice of removal is timely as it is filed less than one year from the date this action was commenced and within thirty days of the service of the Complaint upon Defendant.  28 U.S.C. § 1446(b); *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 119 S. Ct. 1322 (1999) (thirty-day deadline to remove commences upon service of the summons and complaint).  Where the Complaint is filed with the Court prior to any service, the removal period runs from the service of the Summons.  *Murphy Bros. v. Michetti Pipe Stringing, Inc*., 526 U.S. 344, 354 (1999).  Plaintiff did not serve a summons upon Defendant.  (Villamor Decl. ¶ 4.)

## III.      JURISDICTION BASED ON DIVERSITY OF CITIZENSHIP

7.      The Court has original jurisdiction of this action under 28 U.S.C. § 1332(a)(1).  As set forth below, this action is removable pursuant to 28 U.S.C. § 1441(a) as the amount in controversy is in excess of $75,000, exclusive of interest and costs, and is between citizens of different states.

88285164v.3

8.      **Plaintiff's Citizenship.**  "An individual is a citizen of the state in which he is domiciled . . . ."  *Boon v. Allstate Ins. Co.*, 229 F. Supp. 2d 1016, 1019 (C.D. Cal. 2002) (citing *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001)).  For purposes of diversity jurisdiction, citizenship is determined by the individual's domicile at the time that the lawsuit is filed.  *Armstrong v. Church of Scientology Int'l*, 243 F.3d 546, 546 (9th Cir. 2000) (citing *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986)).  A person's domicile is the place he or she resides with the intent to remain indefinitely. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).  Residence is prima facie evidence of domicile.  *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994) (holding that "the place of residence is prima facie [evidence of] domicile").

9.      At the time Plaintiff filed this civil action on July 21, 2022, Defendant alleges based on information and belief that Plaintiff was a citizen and resident of the State of Arizona.  Plaintiff, a pro se litigant, listed an address in Phoenix, Arizona on the Complaint.  (*See* Exhibit 1.)  Furthermore, in several recent court opinions, including a court order pre-dating Plaintiff's filing of the Complaint, Plaintiff is identified as a resident of Arizona.  *See, e.g., Strojnik v. Moraya Investments, LLC*, 2022 WL 4087506, *1, 20-cv-01291-DMR (N.D. Cal. Sept. 6, 2022) (Stating that "Strojnik resides in Maricopa County, Arizona" in order denying parties' cross motions for summary judgment); *Strojnik v. Buffalo Wild Wings, LLC*, 2022 WL 2287274, at *1-2, 22-cv-00682-JLT-BAK (SAB) (E.D. Cal. June 24, 2022) (stating "it is unclear why Mr. Strojnik—*a resident of Phoenix, Arizona*—is frequently in El Centro, California" in an order rejecting Plaintiff's complaint pursuant to a prefiling order, and noting "Mr. Strojnik had been disbarred by the State Bar of Arizona and declared a vexatious litigant in at least three jurisdictions—the United States District Courts for the Northern District of California, the Central District of California, and the District of Arizona—for filing frivolous ADA complaints") (emphasis added); *Strojnik v. Express, LLC*, 2022 WL 1394556, at *1-2, 22-cv-452-TWR-AHG (S.D. Cal. Apr. 18, 2022) (identifying Plaintiff

4

as a "resident of Phoenix, Arizona" in an order rejecting Plaintiff's complaint pursuant to a prefiling order); *Strojnik v. Panera Bread Company*, 2022 WL 1063520, at *5, 22-cv-440-TWR-MDD (S.D. Cal. Apr. 8, 2022) (stating "Plaintiff [Peter Strojnik] lives in Phoenix, Arizona).

10.    **Defendant's Citizenship.**  Pursuant to 28 U.S.C. §1332(c), a "corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."

11.    Defendant is now, and ever since this action commenced has been, a corporation incorporated under the laws of the State of Washington.  (Declaration of Angela Webster-Lam ("Webster-Lam Decl.") ¶ 3.)  Accordingly, Defendant is a citizen of the State of Washington.

12.    The appropriate test to determine a corporation's principal place of business is the "nerve center" test.  *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010).  Under the "nerve center" test, a corporation's principal place of business is the place where its "officers direct, control and coordinate the corporation's activities."  *Id*. at 92.  A corporation typically directs, controls and coordinates its activities from its headquarters. *Id*.

13.    Under the "nerve center" test, Defendant's principal place of business is in the state of Washington because Defendant's corporate headquarters are located in Seattle, Washington, and the majority of its executive functions take place in Seattle, Washington.  Defendant's high-level management team is based in the state of Washington and conducts Defendant's business from the Seattle, Washington headquarters.  Defendant's corporate and administrative functions, such as human resources, payroll, finance, accounting, information systems, corporate social responsibility, and marketing are located in Seattle, Washington.  (Webster-Lam Decl. ¶ 4.)

14.    As a result, Defendant is not now, and was not at the time of the filing of the Complaint, a citizen of the state of California.  (Webster-Lam Decl. ¶ 5.)  Instead,

Defendant is now, and was at the time of the filing of the Complaint, a citizen of the state of Washington.  (Webster-Lam Decl. ¶¶ 3-4.)

15. **Amount in Controversy.**  While Defendant denies any liability as to Plaintiff's claims, the amount in controversy requirement for diversity jurisdiction is satisfied because "it is more likely than not" that the amount exceeds the jurisdictional minimum of $75,000.  28 U.S.C. § 1332(a)(1); *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996) (where a plaintiff's state court complaint does not specify a particular amount of damages, the defendant must provide evidence establishing that it is "more likely than not" that the amount in controversy exceeds the requisite threshold).

16. Where a complaint does not allege a specific amount in damages, the removing defendant bears the burden of proving by a *preponderance of the evidence* that the amount in controversy exceeds the statutory minimum.  *Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 683 (9th Cir. 2006); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 701 (9th Cir. 2007).

17. Further, "the amount-in-controversy inquiry in the removal context is not confined to the face of the complaint."  *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) (finding that a court may consider facts presented in the removal petition).  When the amount in controversy is not apparent from the face of the complaint, a defendant may set forth underlying facts supporting its assertion that the amount in controversy exceeds the jurisdictional threshold.  *Id.*; *Gaus v. Miles, Inc.*, 980 F.2d 564, 566-67 (9th Cir. 1992).

18. As the Supreme Court has explained, "a defendant's notice of removal need only include a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 553-54 (2014) ("[W]hen a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court."); *Valdez*, 372 F.3d at 1117 ("the parties need not predict the trier of fact's eventual award with one hundred percent accuracy").  Defendant

88285164v.3

is not obligated to "research, state, and prove the plaintiff's claims for damages." *Behrazfar v. Unisys Corp.*, 687 F. Supp. 2d 999, 1004 (C.D. Cal. 2009) (quoting *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204-05 (E.D. Cal. 2008)); *Rippee v. Boston Market Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005) (noting that the inquiry is "what is in controversy" by the plaintiff's complaint, not what a defendant will actually owe).

19.      **Cost of Complying with Requested Injunctive Relief**.  In determining whether a complaint meets the $75,000 threshold under 28 U.S.C. § 1332(a), courts may consider the value of injunctive relief in the amount-in-controversy calculation.  *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977) ("In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation.").  *See also Martinez v. Epic Games, Inc.*, 2020 WL 1164951, at *3, 19-cv-10878-CJC-PJW (C.D. Cal. Mar. 10, 2020) ("When a plaintiff seeks injunctive relief, the pecuniary value of such relief is included in the amount in controversy.") (citing *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 416 (9th Cir. 2018) ("The amount in controversy may include damages . . . *and the cost of complying with an injunction"*) (internal quotation omitted; emphasis added)).  "In the Ninth Circuit, the value of the injunction for purposes of determining the amount in controversy is assessed from 'either viewpoint'—that is, the amount that either party can gain or lose from the issuance of the injunctive relief."  *Martinez,* 2020 WL 1164951, at *3.  When "the potential cost to the defendant of complying with the injunction exceeds [$75,000]," the amount in controversy is established."  *In re Ford Motor Co./Citibank (S.D.), N.A.*, 264 F.3d 952, 958 (9th Cir. 2001).

20.      Plaintiff seeks an "[o]rder that Starbucks implement enforceable policies, practices, or procedures to afford goods, services, facilities, privileged, advantages, or accommodations to Plaintiff and others similarly situated pursuant to the law." (Complaint ¶ 31(A).)  Plaintiff alleges that the service counter design at eight different Starbucks locations in California is an "inaccessible service counter design." (Complaint

¶ 21.)  Specifically, Plaintiff alleges that "[t]he service counter design at Starbucks stores does not provide a 36" long lowered section that is uncluttered with merchandise and equipment.  (Complaint ¶ 23.)  In order to comply with an injunction requiring Defendant to maintain a 36" long lowered section that is uncluttered with merchandise and equipment, Defendant would have to remove all merchandise from its sales counter.  The sales counter where this merchandise is located is extremely valuable because it presents items for sale in a convenient location and promotes impulse purchases. (Declaration of Andy Lee ¶ 4.)  These items include gift cards, cookies, dried fruit/nuts, mints, gum , chocolate, and snack bars.  (*Id.* ¶ 5.)  The estimated cost, in the form of lost revenue, resulting from the amount of lost selling space on Defendant's service counter for at least five of the eight Starbucks locations identified in the Complaint certainly would exceed $75,000 within one year of removal of the merchandise.  As set forth in the Lee Declaration, the revenue from the sales of the items that would have to be permanently removed from the sales counter *for the past fiscal year alone* (defined as Oct 4, 2021 to Oct 2, 2022) was greater than $577,977 at five of the eight stores at issue in this case.  (*Id.* ¶¶ 5-7.) Thus, there is no question that the *permanent* removal or relocation of these items from a premium selling space would result in loss of $75,000 in revenue.

21.  **Attorneys' Fees.**  "[W]here an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy."  *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998).  Plaintiff brings a claim against Defendant pursuant to the Consumer Legal Remedies Act.   Section 1780(e) of the CLRA states: "The court shall award court costs and attorney's fees to a prevailing plaintiff in litigation filed pursuant to this section.  Reasonable attorney's fees may be awarded to a prevailing defendant upon a finding by the court that the plaintiff's prosecution of the action was not in good faith."

22.  Defendant anticipates that it will file a Motion to Dismiss.  If that motion is not granted, then the Parties will propound and respond to written discovery, take at least two fact depositions, conduct expert inspections at the eight stores, and file motions for

summary judgment. Defendant anticipates that if its Motion to Dismiss and/or Motion for Summary Judgment are successful, it would be able to establish that Plaintiff's prosecution of this case was not in good faith. Based on my past cases with comparable litigation activities, defense feeds and costs through summary judgment will most certainly exceed $75,000 in fees and costs. If the case proceeds to trial, Starbucks will incur additional fees and costs of at least $75,000, for a total of $150,000. These fees are recoverable if Starbucks is a prevailing party under Section 1780(e) of the CLR and the Court determines that the case was not brought in good faith. There is a substantial basis for this finding because, prior to this filing and in response to Plaintiff's demand letter, on May 25, 2022, Starbucks advised Plaintiff that the U.S. Court of Appeals for the Ninth Circuit has already ruled in three cases that Starbucks has no obligation to provide 36" of clear space on its sales counter in connection with this sales counter design which is entirely at an accessible height. (Villamor Decl. ¶ 8.)

23. **Total Amount in Controversy.** Based upon the allegations contained in Plaintiff's Complaint, the value of Plaintiff's requested injunctive relief, and the attorneys' fees available to Defendant under the CLRA, the $75,000 jurisdictional threshold is satisfied. While Defendant denies any liability as to Plaintiff's claims, it is "more likely than not" that the amount in controversy in this action exceeds $75,000, exclusive of interest and costs, as required by 28 U.S.C. § 1332(a).

24. Because diversity of citizenship exists between Plaintiff and Defendant, and the matter in controversy between the Parties exceeds $75,000, this Court has original jurisdiction of the action pursuant to 28 U.S.C. § 1332(a)(1) and removal is proper.

**IV. VENUE**

25. Without waiving Defendant's right to challenge, among other things, personal jurisdiction and/or venue by way of motion, responsive pleading, or otherwise, venue lies in the United States District Court for the Northern District of California, pursuant to 28 U.S.C. §§ 84(c)(2), 1441, and 1446(a) because this action originally was brought in the Superior Court of the State of California, County of Santa Clara.

88285164v.3

Therefore, venue is proper because it is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

## V.   NOTICE OF REMOVAL TO PLAINTIFF AND THE SUPERIOR COURT

26.     Pursuant to 28 U.S.C. § 1446(d), written notice of the filing of this Notice of Removal will be promptly served on Plaintiff and filed with the Clerk of the Superior Court of the State of California, County of Santa Clara.

27.     This Notice of Removal will be served on Plaintiff.  A copy of the Proof of Service regarding the Notice of Removal will be filed shortly after these papers are filed and served.

## VI.   PRAYER FOR REMOVAL

Wherefore, Defendant prays that this civil action be removed from the Superior Court of the State of California, County of Santa Clara to the United States District Court for the Northern District of California.

DATED: November 11, 2022                    SEYFARTH SHAW LLP


By: */s/ Myra B. Villamor*
       Myra B. Villamor
       Attorneys for Defendant
       STARBUCKS CORPORATION

DEFENDANT'S NOTICE OF REMOVAL

88285164v.3

# EXHIBIT 1

E-FILED
7/21/2022 1:12 PM
Clerk of Court
Superior Court of CA,
County of Santa Clara
22CV402294
Reviewed By: A. Villanueva

Peter Strojnik
7847 North Central Ave.
Phoenix, Arizona 85020
602-524-6602
ps@strojnik.com

## IN THE SUPEROR COURT OF THE STATE OF CALIFORNIA

## SANTA CLARA COUNTY

Case No.: 22CV402294

Peter Strojnik,

Plaintiff,

vs.

Starbucks Corporation

Defendant.

**Verified Complaint For:**

1.  Injunctive Relief; and

2.  Remedies Pursuant to Unfair Competition Law (Cal. Bus. Code. §§17200 et seq); and

3.  Remedies Pursuant to Consumer Legal Remedies Act (Cal. Civ. Code §§1750 et seq).

## SYNOPSIS

1.  Starbucks' written marketing and public relations position is designed to convince the public that "discrimination has no place at Starbucks" and that Starbucks "strive[s] to create accessible environments in [its] stores." Both statements are patently false.

2.  The design of Starbucks' stores common to hundreds± of locations observed by Plaintiff display a common discriminatory and inaccessible policy. Starbucks is fully aware of its discriminatory and inaccessible design as a result of numerous claims and lawsuits that had been filed against it.

3.  Plaintiff relied on and believed Starbucks' policy of non-discrimination and accessibility only to find out that all Starbucks' has for years maintained discriminatory and inaccessible discriminatory design that violates both the Americans with Disabilities Act and the Unruh Civil Rights act. This Verified Complaint seeks remedies as follows:

1

(i) Enjoin Starbucks from its continuous failure to implement policies, practices, or procedures necessary to afford its services, facilities, or accommodations to individuals with disabilities, and/or

(ii) Enjoin Starbucks from its false marketing and public relations campaign to accurately reflect Starbucks actual discriminatory, non-inclusive and inaccessible policies; and

(iii)   Order Starbucks to pay $0.01 in nominal and punitive damages.

4.  This is  not a construction related accessibility case.

## FACTUAL ALLEGATIONS

### -A-
### Facts Relating to Starbucks Marketing and Public Relations Statement on Discrimination

5.  Plaintiff realleges all allegations elsewhere in this Verified Complaint.

6.  Starbucks's marketing and public relations position on discrimination is expressed by Starbucks' Third Civil Rights Assessment[1] where Starbucks' CEO Kevin Johnson makes it clear that:

> I want to be very clear: racism and discrimination have no place at Starbucks. Not with customers. Not with partners. If you ever have a concern regarding racism or discrimination, we have several resources in place to support you, including your PRO partner, PRSC, or our Ethics & Compliance team.

7.  In its Commitment to Access and Disability Inclusion[2], Starbucks states that "we strive to create accessible environments in our stores."

8.  For years, Starbucks has groomed its corporate image as a "hip" and "woke" coffee shop accepting of all patrons no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status.

9.  Plaintiff and the public in general have the right to rely on Starbucks' self-promoting campaign of integration, non-discrimination and accessibility.

---

[1] https://stories.starbucks.com/press/2021/our-third-civil-rights-assessment/

[2] https://stories.starbucks.com/press/2015/starbucks-commitment-to-access-and-disability-inclusion/

2

10. Starbucks nurtures its public perception as an integrating, non-discriminatory corporate giant in order to maximize sales.

11. Starbucks' self-promoting statements as an integrating, non-discriminatory corporate giant, are false.

12. In particular, Starbucks' statements that "discrimination has no place at Starbucks" and its statement that "we strive to create accessible environments in our stores" are patently false.

**-B-**
**Falsity of Starbucks' Non-Integration, Discrimination and Inaccessibility**

13. Plaintiff is an avid Starbucks patron and has purchased coffee from hundreds± of Starbucks stores all over the United States, many of them in the Santa Clara County where this Verified Complaint is filed.

14. Starbucks' service counter design at every one of the stores Plaintiff visited violates the Americans with Disabilities Act and the Unruh Civil Rights Act and is unusable to persons with disabilities because:

    a.  The service counters are cluttered with merchandise and equipment[3] and are unusable to persons with disabilities.

    b.  Starbucks stores place Starbucks' promotional merchandise in front of or close to the service counters which prevents a parallel approach to the service counter.

15. Plaintiff previously advised Starbucks of inaccessible facilities at its stores, but Starbucks has not remediated its stores.

16. Other claimants who have similarly advised Starbucks of inaccessible facilities at its stores, but Starbucks has not remediated its stores.

17. Numerous disabled individuals have filed lawsuits against Starbucks for inaccessible facilities at its stores, but Starbucks has not remediated its stores.

---

[3] See U.S. Dept. of Justice, *Maintaining Accessible Features in Retail Establishments* Checklist at 15. https://www.ada.gov/business/retail_access.htm

18. Starbucks' continuous, relentless and inexcusable failure to remediate known inaccessible facilities at its stores and its intentional discrimination against persons with disabilities is despicable[4].

19. Starbucks's misconduct is carried on with a willful and conscious disregard of the rights of disabled individuals.

20. Starbucks's cruel and unjust hardship in conscious disregard of that person's rights.

21. For example, Plaintiff documented Starbucks' inaccessible service counter design at the following Starbucks stores:

    a.  Starbucks # 29858, 3835 Ming Ave, Bakersfield, CA 93304 on March 18, 2022:



    b.  Starbucks #62527, 3919 Rosedale Hwy., Bakersfield, California on March 19, 2022.

---

[4] "Despicable conduct" has been described as conduct that is "so vile, base, contemptible, miserable, wretched or loathsome that it would be looked down upon and despised by ordinary decent people." (*Lackner v. North* (2006) 135 Cal.App.4th 1188, 1210.)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



c.  Starbucks #2406, 750 N. Imperial Ave., El Centro, California on March 12, 2022.



d.  Starbucks Store #7962, 599 E. Danenberg Drive, El Centro, California on March 12, 2022.

5



e. Starbucks Store #8751, 202 S. Imperial Ave., El Centro, California on March 12, 2022.



f. Starbucks Store #51768, 2049 N. Imperial Ave., El Centro, California on March 12, 2022.

1
2
3
4
5
6
7
8
9
10
11
12
13



14   g.  Starbucks My Own Brew Store, 2701 Ming Ave, Bakersfield, CA 93304 on
15       March 18, 2022.

16
17
18
19
20
21
22
23
24
25
26



27   h.  Starbucks in Vons at 7788 Regents Rd., La Jolla, California on April 27, 2022.
28



22. The service counter design at Starbucks stores does not provide a 36" long lowered section that is uncluttered with merchandise and equipment[5].

23. The position of Starbucks' merchandising display baskets does not permit a disabled person to approach the service counter either through a parallel or forward approach.

**Count One – Injunctive Relief**
(Cal. Code. Civ. Proc. §526(a)(1))

24. Plaintiff incorporates all allegations contained elsewhere in this Verified Complaint.

25. Plaintiff is disabled as defined by the Americans with Disabilities Act ("ADA") and Unruh Civil Rights Act ("Unruh").

26. ADA and Unruh provide that Plaintiff has the legal right to not be discriminated on the basis of his disabilities in the full and equal enjoyment of goods, services, facilities, privileges, advantages and accommodations of any place of public accommodation.

27. ADA and Unruh further provide that a public accommodation is prohibited from utilizing standards, criteria or methods of administration that  have the effect of discriminating on the basis of Plaintiff's disabilities.

---

[5] See U.S. Dept. of Justice, *Maintaining Accessible Features in Retail Establishments* Checklist at 15.
https://www.ada.gov/business/retail_access.htm

28. ADA and Unruh define ableist discrimination as a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the accommodation would work a fundamental alteration of those services and facilities.

29. ADA and Unruh define ableist discrimination as a failure to remove barriers where such removal is readily achievable.

30. Starbucks has failed to modify its policies, practices, or procedures by failing to remediate the design of its service counters.

31. Starbucks employs illegal standards of accessibility design in the design and use of its service counters.

WHEREFORE, Plaintiff requests relief as follows:

A. Declaration that at the commencement of this action Starbucks did not have an enforceable policies, practices, or procedures to afford goods, services, facilities, privileges, advantages, or accommodations to Plaintiff and others similarly situated; and

B. Order that Starbucks implement enforceable policies, practices, or procedures to afford goods, services, facilities, privileges, advantages, or accommodations to Plaintiff and others similarly situated pursuant to law; and

C. Order that the implementation of the policies, practices and procedures be enforced through contempt proceedings with significant coercive monetary penalties; and

D. For costs and expenses and lawyer's fees should Plaintiff hire a lawyer; and

E. For nominal and punitive damages in the sum of $0.01.

F. The provision of whatever other relief the Court deems just, equitable and appropriate.

### Count Two – Violation of Unfair Competition Law
(Cal. Bus.& Prof. Code §§17200 – 17209)

32. Plaintiff realleges all allegations elsewhere in this Verified Complaint.

33. The Unfair Competition Law ("UCL") forbids, "unlawful, unfair or fraudulent" conduct in connection with virtually any type of business activity.

34. Starbucks' marketing and public relations strategy includes a dissemination of false and superficial loyalty to non-discrimination, inclusion and accessibility.

35. The statements that "discrimination [has] no place at Starbucks" is false.

36. The statement that "we strive to create accessible environment in our stores" is false.

37. Plaintiff, as a reasonable consumer, believed in Starbucks' false statements of inclusion and non-discrimination.

38. Plaintiff, as a reasonable consumer, buys coffee at Starbucks based in part on Starbucks' stated commitment to non-discrimination and accessibility.

39. Plaintiff suffered an economic injury by virtue of patronizing Starbucks based on Starbucks' false self-image, and paying a premium for Starbucks' coffee beyond the fair market value of said coffee.

40. Starbucks acted unfairly and fraudulently by (1) fraudulently misrepresenting its commitment to (i) nondiscrimination, (ii) fraudulently misrepresenting that it strives to create accessible environments in its stores, (iii)  failing to disclose that its statements referenced above are marketing statements only and are untrue.

WHEREFORE, Plaintiff prays for relief as follows:

A.  Order enjoining Starbucks from its continuing violation of UCL; and

B.  For costs and expenses and lawyer's fees should Plaintiff hire a lawyer; and

C.  For nominal and punitive damages in the sum of $0.01.

D.  The provision of whatever other relief the Court deems just, equitable and appropriate.

### Count Four – Consumer Legal Remedies Act ("CLRA")
(Cal. Civ. Code §§1750-1784)

41. Plaintiff realleges all allegations elsewhere in this Verified Complaint.

42. The CLRA was enacted in an attempt to alleviate social and economic problems stemming from deceptive business practices . . . . As stated by the Court of Appeal, "the [CLRA] is a legislative embodiment of a desire to protect California consumers and furthers a strong public policy of this state." To achieve that end, the CLRA

proscribes 24 specified business acts or practices. The Legislature intended that courts construe the CLRA liberally to "protect consumers against unfair and deceptive business practices and provide efficient and economical procedures to secure such protection."

43. The CLRA provides "consumers" with a private right of action for "unfair methods of competition" and "unfair or deceptive acts or practices" in connection with "a transaction intended to result or that results in the sale or lease of goods or services."

44. Starbucks engaged in unfair and deceptive acts or practices by falsely representing itself as an inclusive, non-discriminatory corporate giant with accessible stores.

45. Starbucks' misrepresentations of its inclusivity and accessibility resulted in Plaintiff's patronage of its stores and his premium payment for coffee as alleged above.

WHEREFORE, Plaintiff prays for relief as follows:

A. Order enjoining Starbucks from its continuing violation of CLRA; and

B. For costs and expenses and lawyer's fees should Plaintiff hire a lawyer; and

C. For nominal and punitive damages in the sum of $0.01.

D. The provision of whatever other relief the Court deems just, equitable and appropriate.

**<u>Request For Trial By Jury</u>**

Plaintiff requests a trial by a jury on issues triable by a jury.

**<u>Verification</u>**

Plaintiff verifies under the penalty of perjury that the above statements of fact are true and correct to the best of his knowledge, information, memory or belief.

DATED July 22, 2022.

_____

Peter Strojnik
Pro Se

# EXHIBIT 2

1   SEYFARTH SHAW LLP
    Myra Villamor (SBN 232912)
2   mvillamor@seyfarth.com
    2029 Century Park East, Suite 3500
3   Los Angeles, California 90067-3021
    Telephone:  (310) 277-7200
4   Facsimile:   (310) 201-5219

5   Attorneys for Defendant
    STARBUCKS CORPORATION

6

7

8                    SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                             COUNTY OF SANTA CLARA

10

11  PETER STROJNIK,                          Case No. 22CV402294

12              Plaintiff,                    **NOTICE OF MISTAKEN FILING OF**
                                             **VEXATIOUS LITIGATION**
13          v.

14  STARBUCKS CORPORATION,

15              Defendant.

16

17

18

19

20

21

22

23

24

25

26

27

28

_____
                NOTICE OF MISTAKEN FILING OF VEXATIOUS LITIGATION
88200271v.1

1    TO THE COURT AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2    PLEASE TAKE NOTICE that on July 21, 2022 Plaintiff Peter Strojnik ("Plaintiff") submitted a

3    Verified Complaint for filing in the above-caption action, which was mistakenly filed by the Clerk.

4    Plaintiff is a vexatious litigant and is subject to the Prefiling Order attached herein as Exhibit A.

5    Plaintiff initiated the litigation in the above-captioned action without obtaining prefiling approval from

6    the presiding judge as required by the Prefiling Order.

7    California Code of Civil Procedure § 391.7(c) states:

8    The clerk may not file any litigation presented by a vexatious litigant subject to a prefiling order

9    unless the vexatious litigant first obtains an order from the presiding justice or presiding judge

10   permitting the filing.  If the clerk mistakenly files the litigation without the order, any party may

11   file with the clerk and serve, or the presiding justice or presiding judge may direct the clerk to

12   file and serve, on the plaintiff and other parties a notice stating that the plaintiff is a vexatious

13   litigant subject to a prefiling order as set forth in subdivision (a).  The filing of the notice shall

14   automatically stay the litigation. The litigation shall be automatically dismissed unless the

15   plaintiff within 10 days of the filing of that notice obtains an order from the presiding justice or

16   presiding judge permitting the filing of the litigation as set forth in subdivision (b). If the

17   presiding justice or presiding judge issues an order permitting the filing, the stay of the litigation

18   shall remain in effect, and the defendants need not plead, until 10 days after the defendants are

19   served with a copy of the order.

20   The filing of this Notice automatically stays litigation in this action, and this action will be

21   automatically dismissed within 10 days of the filing of this Notice unless Plaintiff, within 10 days of the

22   filing of this Notice, obtains an order from the presiding justice or presiding judge permitting the filing

23   of the litigation in the this action.  Cal. Code of Civ. Proc. § 391.7(c).

24   DATED: October 21, 2022                         SEYFARTH SHAW LLP

25

26                                                  By: _____

27                                                  Myra Villamor
                                                    Attorneys for Defendant
28                                                  STARBUCKS CORPORATION

88200271v.1

# Exhibit "A"

Exhibit "A"     Exhibit "A"     Exhibit "A"     Exhibit "A"     Exhibit "A"

**VL-100**

| ATTORNEY OR PARTY WITHOUT ATTORNEY:<br>*(To be completed only if a party is making the motion)*<br>NAME: Philip H. Stillman<br>FIRM NAME: STILLMAN & ASSOCIATES<br>STREET ADDRESS: 3015 North Bay Road, Suite B<br>CITY: Miami Beach     STATE: FL   ZIP CODE: 33140<br>TELEPHONE NO.: (888) 235-4279   FAX NO.: (888) 235-4279<br>E-MAIL ADDRESS: pstillman@stillmanassociates.com<br>ATTORNEY FOR *(name)*: Hotel Cheval, LLC     STATE BAR NUMBER: 152861 | FOR COURT USE ONLY<br><br>**FILED**<br><br>FEB 02 2021<br><br>SAN LUIS OBISPO SUPERIOR COURT<br>BY_____<br>Jayme Barragar, Deputy Clerk |

| ☐ COURT OF APPEAL,   APPELLATE DISTRICT, DIVISION<br>☒ SUPERIOR COURT OF CALIFORNIA,  COUNTY OF San Luis Obispo<br>STREET ADDRESS: 901 Park Street<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: Paso Robles, CA 93446<br>BRANCH NAME: Paso Robles Branch |

| CASE NAME:<br>Peter Strojnik v. Ayres-Paso Robles, L.P., et al., |

| **PREFILING ORDER—VEXATIOUS LITIGANT** | CASE NUMBER:<br>20CVP0189 |

1. Name and address of each plaintiff or cross-complainant or other party subject to this prefiling order:

   Peter Strojnik
   7847 N. Central Avenue
   Phoenix, Arizona 85020

2. This prefiling order is entered pursuant to a motion made by ☐ the court  ☒ party *(name):* Hotel Cheval, LLC

3. The person or persons identified in item 1, unless represented by an attorney, are prohibited from filing any new litigation in the courts of California without approval of the presiding justice or presiding judge of the court in which the action is to be filed.

4. The clerk is ordered to provide a copy of this order to the Judicial Council of California by fax at 415-865-4329 or by mail at the address below.

   > Vexatious Litigant Prefiling Orders
   > Judicial Council of California
   > 455 Golden Gate Avenue
   > San Francisco, California 94102-3688

Date: 2/2/21

_____
JUDICIAL OFFICER

Page 1 of 1

Form Adopted for Mandatory Use<br>Judicial Council of California<br>VL-100 [Rev. September 1, 2018]

**PREFILING ORDER—VEXATIOUS LITIGANT**

Code of Civil Procedure, § 391.7
www.courts.ca.gov

privacy, please press the Clear This Form button after yo[ ]   [ Print this form ]  [ Save this form ]   [ Clear this form ]

1

## **PROOF OF SERVICE**

2

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

3

     I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is:  2029 Century Park East, Suite 3500,

4

Los Angeles, California  90067.  On October 21, 2022, I served the within document(s):

5

    **NOTICE OF MISTAKEN FILING OF VEXATIOUS LITIGATION**

6

☐    **(BY MAIL)**  The envelope was mailed with postage thereon fully prepaid.  As follows:

7

I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. postal service on that same

8

day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal

9

cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

10

☐    **(BY HAND DELIVERY)**  I delivered the within documents to Nationwide Legal, Inc. for delivery to the person(s) at the address(es) set forth below with instructions that such

11

envelope be delivered personally on                    , 2022.

12

☒    **(BY OVERNIGHT MAIL)**  I am readily familiar with the firm's practice of collection and processing correspondence for mailing with FedEx.  Under that practice it would be

13

deposited with FedEx on that same day thereon fully prepaid at Los Angeles, California in the ordinary course of business.  The envelope was sealed and placed for collection and

14

mailing on that date following ordinary business practices.

15

☐    **(BY E-MAIL)**  I hereby certify that this document was served by e-mail delivery on the parties listed herein at their most recent e-mail of record in this action from Los Angeles,

16

California.

17

PETER STROJNIK                                     Tel:     602-524-6602

18

7847 North Central Avenue                      ps@strojnik.com
Phoenix, Arizona  85020

19

                                       *[in pro per]*

20

     I declare under penalty of perjury under the laws of the State of California that the above is true

21

and correct.

22

     Executed on October 21, 2022, at Los Angeles, California.

23

                                                        Inah Lee

24

25

26

27

28

88282806v.1

# EXHIBIT 3

1  Peter Strojnik
2  7847 North Central Ave.
   Phoenix, Arizona 85020
3  602-524-6602
   strojnikp@gmail.com
4

5          **IN THE SUPEROR COURT OF THE STATE OF CALIFORNIA**
6                        **SANTA CLARA COUNTY**

7  Peter Strojnik,                          Case No.: 22CV402294

8                              Plaintiff,   **REQUEST TO REFER TO THE**
                                            **PRESIDING JUDGE THE**
9             vs.                           **HONORABLE THEODORE C.**
                                            **ZAYNER FOR APPROVAL**
10 Starbucks Corporation
                                            **NOTICE OF NEW EMAIL**
11                          Defendant.      **(strojnikp@gmail.com)**
12

13

14         On October 21, 2022, counsel for Starbucks submitted the Notice of Mistaken
15 Filing of Vexatious Litigation ("Notice") seeking to un-file Plaintiff's July 21, 2022
16 Verified Complaint. Starbucks claims that Plaintiff's Verified Complaint ("Complaint")
   was not first submitted to the Superior Court's Presiding Judge as required by a February
17 2, 2021 Pre-Filing Order. Exhibit "A" to Notice.

18         Contrary to Starbuck's reference to Plaintiff's Verified Complaint as "Vexatious
19 Litigation," the causes of action asserted seek no more than injunctive relief and $0.01 in
20 nominal damages. There is nothing "vexatious" in the Complaint.

21         The primary purpose of the Complaint is to require Starbucks to comply with the
22 anti-discrimination provisions of the Unruh Civil Rights Act and the Americans With
23 Disabilities Act. The primary purpose of the Complaint is to achieve an order requiring
24 Starbucks to implement enforceable policies, practices or procedures to afford goods,
25 services, facilities, privileges, advantages, or accommodations to Plaintiff and other
26 disabled individuals. *See* Complaint at ¶31. The secondary purpose it to enjoin Starbucks
27 from the false advertising strategy which is alleged to include:

28

                                            1

6.  Starbucks's marketing and public relations position on discrimination is expressed by Starbucks' Third Civil Rights Assessment[1] where Starbucks' CEO Kevin Johnson makes it clear that:

> I want to be very clear: racism and discrimination have no place at Starbucks. Not with customers. Not with partners. If you ever have a concern regarding racism or discrimination, we have several resources in place to support you, including your PRO partner, PRSC, or our Ethics & Compliance team.

7.  In its Commitment to Access and Disability Inclusion[2], Starbucks states that "we strive to create accessible environments in our stores."

8.  For years, Starbucks has groomed its corporate image as a "hip" and "woke" coffee shop accepting of all patrons no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status.

9.  Plaintiff and the public in general have the right to rely on Starbucks' self-promoting campaign of integration, non-discrimination and accessibility.

In bringing the Complaint, Plaintiff takes his cue from the U.S. Department of Justice. The DOJ brings its enforcement activities through a single proceeding covering all individual places of public accommodation operating under the umbrella of one gigantic company. So, for example, instead of suing each Hilton hotel separately, the DOJ required Hilton entered into one consent decree requiring Hilton to "not engage in any practice that discriminates against individuals with disabilities in violation of Title III of the ADA." *See* Fact Sheet: Consent Decree in *U.S. v. Hilton Worldwide, Inc.*[3]

One order in the DOJ case against Hilton covered all Hilton owned or operated hotels. On injunction here would cover all Starbucks Stores. This approach is highly beneficial to the preservation of court resources because there would be no need to file

---

[1] https://stories.starbucks.com/press/2021/our-third-civil-rights-assessment/

[2] https://stories.starbucks.com/press/2015/starbucks-commitment-to-access-and-disability-inclusion/

[3] Consent Decree: United States v. Hilton Worldwide, Inc., Fact Sheet (ada.gov)

2

separate cases against separate stores, it would save Starbucks litigation expenses for each store that is non-compliant, and it would make the anti-discrimination representations true.

Most of all, it would welcome the disabled patrons back to the stores.

For these reasons Plaintiff respectfully request that:

1.  The Court accept the Verified Complaint as is; or, alternatively

2.  Forward the Verified Complaint to the Presiding Judge for acceptance.

RESPECTFULLY SUBMITTED this October 23, 2022.

_____
Peter Strojnik
Pro Se

Copy emailed to
Myra Villamor
SEYFARTH SHW LLP
2029 Century Park East. Suite 3500
Los Angeles, CA 90067-3021
mvillamor@seyfarth.com
Counsel for Starbucks
/s/ ps